WARREN CRESSEY *vs.* JOSEPH PARKS.

Penobscot. Opinion August 25, 1883.

*Collector's sale. Time. Days.. Sunday.*

When chattels distrained are to be sold in a specified time, the day of seizure is excluded; and the day of sale included in the reckoning. Thus goods seized on the eighth are to be sold on the twelfth, when they are to be sold in four days after seizure.

When a statute gives a definite number of days for doing an act, and says nothing about Sunday, the days are consecutive, and include Sunday. And when the day on which the act is to be done falls on Sunday, the act must be done on the next day.

ON EXCEPTIONS.

The opinion states the case and material facts.

By stipulations in the exceptions, if they were not sustained, the defendant was to be defaulted, and damages were to be assessed by the clerk.

*D. F. Davis* and *C. A. Bailey*, for the plaintiff, cited : R. S., c. 6, § 104; *Brackett* v. *Vining*, 49 Maine, 356; *Farnsworth Co.* v. *Rand*, 65 Maine, 19; *Bemis* v. *Leonard*, 118 Mass. 502; *Robinson* v. *Waddington*, 13 Queen's Bench, 753 (66 E. C. L.); *Ex parte Simpkin*, 2 Ellis and E. (Queen's Bench) 392 (105 E. C. L.); *Rawlins* v. *The Overseers of West Derby*, 2 C. B. 72; *Asmole* v. *Goodwin*, 2 Salk. 624; *Peacock* v. *Regina*, 4 C. B. (N. S.) 264 (93 E. C. L.); *Morris* v. *Barrett*, 7 C. B. (N. S.) 138 (97 E. C. L.); *Hughes* v. *Griffiths*, 13 C. B. (N. S.) 323 (106 E. C. L.); *Reg.* v. *Justices of Middlesex*, 7 Jurist, 396; *Rowberry* v. *Morgan*, 9 Exch. 730; *Ex parte Dodge*, 7 Cowen, 147; *In the matter of Goswiler's estate*, 3 Pa. 200; *King* v. *Dowdall*, 2 Sandf. 131; *Barnes* v. *Eddy*, 12 R. I. 25; *Wallace* v. *King*, 1 H. Black, 13; *Harper* v. *Taswell*, 6 C. & P. 166 (25 E. C. L. 336); *Ordway* v. *Ferrin*, 3 N. H. 69; *Creswell* v. *Green*, 14 East. 537; *Tuttle* v. *Gates*, 24 Maine, 398; *Bissell* v. *Bissell*, 11 Barb. 96; *Taylor* v. *Corbiere*, 8 How. Pr. 385; *Franklin* v. *Holden*, 7 R. I. 215; *Carville* v. *Additon*, 62 Maine, 459; *Sawyer* v. *Wilson*, 61 Maine, 532; *Gorham* v. *Hall*, 57 Maine, 58; *Orneville* v. *Pearson*, 61 Maine, 557; *Morgan* v. *Edwards*, 5 H. & N. 415; *Mayer* v. *Harding*, 2 L. R. Q. B. 410; *Windsor* v. *China*, 4 Greenl. 298; *Priest* v. *Tarleton*, 3 N. H. 93; *Castle* v. *Burditt*, 3 T. R. 623; *Souhegan Factory* v. *McConihe*, 7 N. H. 309; *Caldwell* v. *Eaton*, 5 Mass. 399; *Titcomb* v. *Ins. Co.* 8 Mass. 334; *Howe* v. *Starkweather*, 17 Mass. 243; *Pierce* v. *Benjamin*, 14 Pick. 356; *Alger* v. *Curry*, 40 Vt. 437.

*Barker, Vose and Barker*, and *A. L. Simpson*, for the defendant.

How soon can a collector of taxes sell distrained property?

In reckoning time the day of seizure is excluded. The debtor is first to have four days within which to pay. That is his time, and until that is fully expired the property cannot be sold.

By the statutes of Massachusetts, c. 8, § 8, in force, and unchanged since 1791 : "The collector shall keep the property four days, at least, at the expense of the owner, and shall, within seven days after the seizure, sell the same, &c. by posting notice forty-eight hours before sale."

When our statute of 1820 was enacted, the Massachusetts provision of keeping four days for the debtor's benefit was retained, in no way shearing the debtor's right to pay within the four full days. Its language is in Smith's laws of Maine, c. 96, § 26, "the distress so taken to keep, the space of four days, at the cost and charge of the owner thereof; and if the owner do not pay the sum or sums of money so assessed upon him, within the space of four days, then the said distress shall be openly sold, &c. notice of sale, &c. being given forty-eight hours next, before the sale and expiration of the four days aforesaid," &c.

In the revision of 1841, the exact words of "then," &c. are retained, but in 1857 and 1871, the "then" is omitted, but in each, the provision of "forty-eight hours notice before the expiration of said four days," are retained.

Now the day of seizure is never counted. The debtor is not to be charged with it as a part of his time, any more than the officer is to be charged with it in his time. The debtor is to have four days to pay in. Any payment before the last hour of the fourth day, or "the expiration of the four days aforesaid," is in season to prevent a sale, and any sale before the last minute of that fourth day, is an encroachment upon his time for payment, and would make the officer liable to trespass. Both cannot have this fourth day. Which shall have it? If the officer can sell on that day the debtor cannot pay. If the debtor can pay at any hour or minute of that day, the officer cannot sell. He can pay "within" that day, the statute says, if not paid "within," "then" "the officer may," &c. and not until "then." *King* v. *Whitcomb*, 1 Met. 331.

Now in this case the officer seized the eighth, and that day cannot be counted — the next day was Sunday and is counted — so he had the ninth, tenth, eleventh and twelfth, till midnight to pay in. He did not pay. The officer having advertised, as

required, "then" sold on the thirteenth at ten A. M. being the first day after "the expiration of said four days." He could not have sold on an earlier day, and ought not to sell at an earlier hour of that day.

In *Brackett* v. *Vining*, 49 Maine, 356, the property was seized October 27, and advertised for sale November 3, when, under our statute the sale could not have been made before November 1, and should have been made on that day. The court properly held, the officer could not keep the property seven days after the seizure, when he should have sold on the fifth, thus keeping it two days beyond the statute time for selling. The owner had till, and including October 31, to pay in, and the officer "then" should have sold, November 1. This, then, is no authority against us.

*Farnsworth Co.* v. *Rand*, 65 Maine, 19, settles the question again that the debtor shall have his four days, and then the officer must sell. In that case the seizure was March 5, and the sale should have been March 10, thus excluding the fifth, the day of seizure, giving the debtor the sixth, seventh, eighth and ninth, to pay in ; the sale should have been on the tenth, and by keeping till the eleventh, the officer became a trespasser *ab initio*.

It will be seen, R. S., c. 6, § 94, that in the form of the collector's warrant, the statute of 1820, is followed by retaining the word, "then." The direction is as follows : "And the distress, so taken, to keep for the space of four days, at the cost and charge of the owner, and if he does not pay the sum so assessed within the said four days, then you are to sell at public vendue," &c. The collector should obey his warrant regardless of any statute which might be in conflict with it. Webster defines, then, when thus used, to mean, "soon afterwards, or immediately afterwards." The Bible so construes it : "First be reconciled to thy brother, then come and offer thy gifts. Matthew 5, 24.

*Carville* v. *Additon*, 62 Maine, 459, is not an authority against our position. WALTON, J., in the opinion, says : "The eighth objection, that the property was not kept four days, is not well founded in fact. The officer's return shows that it was kept four days, and there is no evidence in the case contradicting it."

The courts of Massachusetts, New Hampshire and Vermont hold that the "four days" mean four full days.

*Barnard* v. *Graves*, 13 Met. 85. In this the distraint was on the sixth. The day of taking was excluded, and the distress kept the seventh, eighth, ninth and tenth, and sold at one o'clock on the eleventh.

In *Ordway* v. *Ferrin*, 3 N. H. 69, and in *Souhegan Factory* v. *McConihe*, 7 N. H. 309, the distress was kept four full days. The rule of the court then was to count the day of seizure as one of the four days. Subsequently the legislature of that state changed the rule excluding the day of seizure, as will be seen in 36 N. H. 302, and 42 N. H. 555, in each of which cases the distress was kept four full days. Also in 36 Vt. 623, POLAND, C. J., at the close of the opinion discusses the reason of the rule.

Thus it will be seen that the rule we invoke is in harmony with the construction given in our sister states, and in harmony with § 94, c. 6, R. S., (the form of the warrant of commitment) and the fair interpretation of the words in § 104, c. 6, R. S., viz: "for the space of four days, and if he does not pay the sum so assessed within the said four days," &c.

Counsel contended in another brief, that while the statute was to be construed strictly, it should be construed reasonably and sensibly, citing: *Winslow* v. *Kimball*, 25 Maine, 493; *Whitney* v. *Whitney*, 14 Mass. 88; *Holbrook* v. *Holbrook*, 113 Mass. 74; *Gibson* v. *Jenny*, 15 Mass. 206; *Commonwealth* v. *Kimball*, 24 Pick. 270; *Stewart* v. *Raymond*, 4 Cush. 314; *Cleaveland* v. *Norton*, 6 Cush. 384.

Sunday intervening cannot be counted as one of the days. *Tuttle* v. *Gates*, 24 Maine, 398; *Thayer* v. *Felt*, 4 Pick. 354.

The remarks of PETERS, J., in *Seekins* v. *Goodale*, 61 Maine, on page 404, apply to this case.

APPLETON, C. J. This is an action of trespass against the defendant, a collector of taxes for the town of Glenburn, for seizing and carrying away six tons of the plaintiff's hay for the non-payment of his taxes and selling the same.

By R. S., c. 6, § 104, "If any person refuses to pay the the taxes assessed against him . . . the collector may

distrain him by his goods and chattels . . and keep such distress for the space of four days at the expense of the owner, and if he does not pay his taxes within that time, the distress shall be openly sold at vendue by the officer for its payment. "

The hay was seized for taxes on Saturday, January 8, and advertised for sale on Thursday, the thirteenth, and thence the sale adjourned to Friday, the fourteenth, when the property seized was sold.

In computing time, the day of the seizure is not to be reckoned. The rule is thus stated by Bishop in his work " On the Written Laws, 107. " When a statute specifies a particular number of days, weeks, or years, the computation should be made by adding, for instance, to the ascertained number of the day in the month, the statutory number. Thus, an enactment passed on the fifth day of the month, to take effect in ten days, will go into operation on the fifteenth day of the month, because the sum of ten and five is fifteen. The rule of reason therefore, may be stated to be, "that of the two extreme days, the one shall be included and the other excluded in the reckoning. "

The term specified by the statute for sale is four days after seizure. The collector keeping the property seized beyond the time in which it could be legally sold, is thereby a trespasser *ab initio. Brackett* v. *Vining,* 49 Maine, 356 ; *Farnsworth Co.* v. *Rand,* 65 Maine, 19.

The statutes in Massachusetts on this subject, are similar to those of this state. The time when the sale was to be made, became an early subject of discussion. In *Caldwell* v. *Eaton,* 5 Mass. 399, PARSONS, C. J., in considering the question says, "The notice must be given forty-eight hours before the expiration of the four days. It is, then, a necessary consequence that they must be sold at auction, after they have been kept four days and no longer. " In *Titcomb* v. *Insurance Co.* 8 Mass. 334, SEWALL, J., says, " Shares taken on execution are to be exposed for sale in the same manner as by law prescribed when personal estate is taken on execution. The time for this purpose, allowed and determined by the general statute, is four days. Now when

four days had expired and no sale had taken place, a new notice was necessary to legalize a subsequent sale. " In *Howe* v. *Stark-worth*, 17 Mass. 241, PARKER, C. J., citing the last named case, says, "The sale under the execution would be bad by suffering more than four days to elapse between the seizure on execution and the sale." To the same effect is the decision in *Pierce* v. *Benjamin*, 14 Pick. 356. Such, too, is the recognized law in this state. "The day of seizure, " remarks SHEPLEY, C. J., in *Tuttle* v. *Gates*, 24 Maine, 395; "is not to be reckoned as one of the four, and the sale cannot be legally made after the fourth day." The day of seizure not being reckoned, the sale must be on the fourth day. *Ordway* v. *Ferrin*, 3 N. H. 69. If the day of the seizure as well as that of the sale, were both excluded, the defendant would be allowed parts of both those days beyond the time required by law. *Bemis* v. *Leonard*, 118 Mass. 502.

The sale in the case at bar should have been on the twelfth. The defendant is not to have four whole days and parts of two others. The rule in England is that in case of goods distrained and sold within four days, the days must be calculated inclusively of the last, and exclusively of the day of taking. *Robinson* v. *Waddington*, 66 E. C. L. 753.

In the Massachusetts statute, the phrase "for the space of four days" occurs as in that of this state. But "the space of four days" embraces no more than four days. Such, too, has been the practical construction, as is clearly shown by the many decisions to which reference has been made.

The main ground of defence is that Sunday is not to be reckoned as a day. The statute provides that the distress is to be kept "for the space of four days at the expense of the owner, " and if the tax be not paid within that time, the distress shall be sold at vendue by the officer for its payment. The expression, "the space of four days," excludes no day. It implies consecutive days. "Sunday," remarks BYLES, J., in *Peacock* v. *The Queen*, 93 E. C. L. 264, "at common law, is just like any other day." "Sunday, " observes LORD ELLEN-BOROUGH, in *Creswell* v. *Green*, 14 East. 537, "is as much a day to occupy space of time as any other day." When the

statute prescribes the number of days within which an act is to be done, and nothing is said about Sunday, it is to be included. It was held in *Carville* v. *Additon*, 62 Maine, 459, that it was no objection to the legality of the collector's proceedings that one of the four days during which the distress was kept was Sunday. So in *The State* v. *Wheeler*, 64 Maine, 532, it was decided the draft for jurors was valid, although one of the four days before the drafting was Sunday.

Whenever the legislature intend Sunday shall be excluded from the days within which an act shall be done, it is done in express terms, as in c. 84, § 3. It is never left to implication. When goods are sold on execution, Sunday is excluded by statute from the four days during which the goods seized are to be kept. But Sunday is not excluded where the collector distrains for non-payment of taxes. R. S., c. 6, § 104. "Where an act of parliament gives a specified number of days for doing a particular act, and says nothing about Sunday," observes HILL, J., in *Ex parte Simpkin*, 2 E. and E. "the days are consecutive days, including Sunday."

In *Asmole* v *Goodwin*, 2 Salk. 624, it was held "as to business done out of court, as rules to plead within four days, etc. Sundays are reckoned the same as other days." The uniform current of authorities is in conformity with this decision up to the present time. Thus in *Ex parte Simpkin*, 2 Ellis and E. 392, it was decided that when an act of parliament gives a specified number of days for doing a particular act and says nothing about Sunday, the days are consecutive days including Sunday. So in this country. In *King* v. *Dowdall*, 2 Sandf. § 131, OAKLEY, C. J., uses this language: "We know of no rule or principle by which it (Sunday) is to be excluded from the computation when it is an intermediate day," and we have supposed the law on the subject to be settled.

The distress for taxes may be made on any day of the week, Sunday excepted. The law has not prohibited seizure on any week day. But the property seized cannot be sold on Sunday, not because Sunday is not a day, but because it is a day on which, by statute, the execution of civil process is prohibited.

R. S., c. 81, § 78. No sale can be made on the preceding Saturday, when the seizure was made on Wednesday, because that would be against the provision of the statute requiring the officer to keep the property distrained four days. When, then, is the sale in such case to be made? The statutes must be construed together. The seizure may. be made on any secular day. The property seized must be kept four days by statute. Its sale is prohibited on Sunday. Being lawfully seized, it must be sold. As it cannot be legally sold within three days, it must be sold on Monday because all official or executive action is prohibited on Sunday. The true rule on this subject is laid down *In the matter of Goswiler's estate,* 3 Pa. 200, thus: "Whenever by a rule of court or an act of the legislature, a given number of days are allowed to do an act, or it is said an act may be done within a given number of days, the day in which the rule is taken or the decision is made is excluded, and if one or more Sundays occur within the time, they are counted unless the last day falls on Sunday, in which case, the act may be done on the next day." To the same effect is the opinion of the supreme court of Rhode Island in *Barrows* v. *Eddy,* 12 R. I. 25. In *Hughes* v. *Griffith,* 106, E. C. L. 323, it was held in the computation of time, that when the last day falls on a Sunday and the act is to be done by the party, it may be done on the next practicable day.

The original notice being defective, no postponement can cure the original defect. "A valid sale cannot be made at an adjournment which would have been invalid if made on the day adjourned from." *Wilson* v. *Sawyer,* 61 Maine, 531.

*Defendant defaulted. Damages*
*to be assessed by the clerk.*

WALTON, DANFORTH, VIRGIN and SYMONDS, JJ., concurred. PETERS, J., did not sit.